IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RALPH LANDON DOW                                                              PLAINTIFF

     V.                              Civil No. 2:15-cv-02011-MEF

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                DEFENDANT

**MEMORANDUM OPINION**

     Plaintiff, Ralph Landon Dow, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

     Plaintiff filed his applications for DIB and SSI on July 10, 2012, alleging a disability onset date of June 12, 2012[1], due to "rotator cuff problems, pinched back, nerves, and carpal tunnel" problems. (T. 178-185, 186-189, 209) The Commissioner denied his applications initially on August

---

[1] Plaintiff filed an earlier application for DIB on February 19, 2010, which application was denied at the hearing level on March 31, 2011 (T. 97-110), and a request for review by the Appeals Council was denied on June 12, 2012 (T. 111-114). No further appeal was taken, and the denial of that application is administratively final and not at issue in this case.

3, 2012 (T. 119-121, 122-124), and denied them at reconsideration on November 7, 2012 (T. 129-130, 131-133). Plaintiff requested an administrative hearing (T. 134-136), and the hearing was held on June 27, 2013, before the Hon. Bill Jones, Administrative Law Judge (ALJ). (T. 27-64) Plaintiff was present and represented by his attorney, Jim O'Hern. (T. 27, 29) Also present were Plaintiff's wife, Debra Dow, and Montie Lumpkin, a vocational expert ("VE"). (T. 29)

At the time of hearing, Plaintiff was 40 years old with a high school education. (T. 68) He had past relevant work ("PRW") experience as a heavy laborer installing septic tanks, as a delivery truck driver, as a feed miller, and as a feed mill operator helper. (T. 60)

On September 19, 2013, the ALJ issued an unfavorable decision finding that Plaintiff's disorder of the right shoulder, bilateral carpal tunnel syndrome, osteoarthritis, disorder of the cervical spine, diabetes mellitus, major depressive disorder, and anxiety disorder were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (T. 14-16) After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that:

> "He can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can occasionally balance, kneel, stoop, crouch, and crawl. He can occasionally perform overhead reaching bilaterally. He can perform frequent handling and fingering bilaterally. From a mental standpoint, he can perform work limited to simple, routine, and repetitive tasks, involving only simple, work related decisions, with few, if any, work place changes and no more than incidental contact with coworkers, supervisors, and the general public." (T. 16)

With the help of the VE, the ALJ determined Plaintiff could not perform his PRW, but he could perform the requirements of representative occupations such as food processing worker, e.g. conveyor line bakery worker (DOT 524.687-022) and spice mixer (DOT 520.687-062), with 581

such jobs in Arkansas and 9,242 jobs in the national economy; and, cutting and slicing machine operators and tenders, e.g. box corner cutter (DOT 640.685-030) and processed film cutter (DOT 976.685-010), with 967 such jobs in Arkansas and 35,067 jobs in the national economy. (T. 20, 61-62) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 20-21)

The Appeals Council denied Plaintiff's request for review on November 14, 2014. (T. 1-6) Plaintiff filed this action on January 15, 2015. (Doc. 1) This case is before the undersigned by consent of the parties. (Doc. 5)  Both parties have filed appeal briefs (Docs. 10, 11), and the case is now ready for decision.

The Court has thoroughly reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

## II.  Applicable Law

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after

reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*. A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff states four issues on appeal: (1) the ALJ improperly found that Plaintiff did not have

a combination of impairments that met or equaled a listing; (2) the ALJ erroneously discredited Plaintiff and his witness; (3) the ALJ ignored a treating physician's RFC assessment; and, (4) the ALJ improperly determined that Plaintiff can perform a significant number of jobs in the national economy. (Doc. 10, p. 2) Plaintiff's argument, however, contains only three sections with these headings: (1) severe impairments; (2) Plaintiff's credibility; and, (3) past relevant work. (Doc. 10, pp. 10-19) Plaintiff advances multiple different arguments within these three sections, but these arguments reduce down to the critical issue of whether there is sufficient evidence to support the ALJ's RFC determination.

The Court is troubled by the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue,* 578 F.3d 838, 844 (8th Cir. 2009). Residual functional capacity "is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy*, 683 F.2d at 1147. Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses

the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff suffers from a torn rotator cuff in his right shoulder and bilateral carpal tunnel syndrome. Treatment for these conditions dates back to at least October 2003. (T. 388) An MRI of Plaintiff's right shoulder on October 2, 2003 revealed a "probable focal but complete tear of the supraspinatus tendon distally" and a "probable partial tear and/or tendonopathy in the infraspinatus tendon." (T. 395) X-ray of the right shoulder on September 9, 2003 showed mild degenerative hypertrophic changes (marginal spurring) at the acromioclavicular joint. (T. 397) A nerve conduction study performed on September 11, 2003 was abnormal and was consistent with bilateral carpal tunnel syndrome, mild in degree, left being slightly worse than right. (T. 398) On October 21, 2003, Dr. Michael Wolfe commented that, "I think he would benefit from surgical intervention there [right shoulder]," and "he could ultimately need carpal tunnel release as well." (T. 388) Plaintiff was referred to another physician for discussion of possible surgical treatment of the shoulder. (T. 388)

The ALJ correctly noted there is no evidence of record that Plaintiff underwent any shoulder surgery, and that Plaintiff continued to work at substantial gainful activity levels with the shoulder and carpal tunnel conditions. (T. 17) Plaintiff explained that his employer would not let him off work, and "there was no way I could afford to do it." (T. 37) He described sharp pain in his shoulder when he moves it, and that his arm "kind of gets like a wet noodle." (T. 37) He testified that his hands go numb, that he drops things, and he can't hold onto things. (T. 38) He described aching pain in his hands on a daily basis, made worse by activities such as driving, when the pain "gets real sharp and numb, burns." (T. 38) He drives no more than he has to, riding with his wife when they take their son to school, because driving causes his hands to go numb. (T. 40) Plaintiff's wife verified that she

drives "all the time." (T. 53-54)

During the relevant period, Plaintiff has continued to be treated for his shoulder pain and numbness and pain in his hands. On July 3, 2012, Plaintiff reported numbness and pain in both hands, dating back years, which he felt had not gotten any worse. (T. 313) During a return visit to his physician on August 28, 2012, Plaintiff complained of worsening problems with his carpal tunnel syndrome with "tingling and numbness in both hands with minimal use," and that he was unable to do much of anything with his hands. He requested further work up so he could have something done to fix the problem. (T. 351) A positive Phalen's test was noted, consistent with carpal tunnel syndrome[2]. (T. 351) A nerve conduction study was ordered. (T. 352) The nerve conduction study was performed on September 13, 2012, and it confirmed a moderate compromise of bilateral median nerves across the wrists involving the sensory and motor components consistent with axonal loss[3] and demyelination[4]. (T. 324) Compared to the nerve conduction study done on September 11, 2003, which showed Plaintiff's carpal tunnel syndrome to be mild in degree, the nerve conduction study performed nine years later on September 13, 2012 revealed moderate compromise of Plaintiff's median nerves bilaterally. This diagnostic finding is consistent with Plaintiff's reports that his condition was worsening. When seen for follow up on September 27, 2012, Plaintiff was diagnosed

---

[2] Phalen's test is a provocative clinical test for carpal tunnel syndrome. *See* www.carpal-tunnel.net/diagnosing/provocative (last accessed January 8, 2016).

[3] Axonal neuropathy is a condition in which the nerve cells begin to function abnormally because the axons are degenerating. The effects of the condition can be felt as tingling, burning, weakness, numbness, or as loss of motor function. *See* www.wisegeekhealth.com/what-is-axonal-neuropathy.htm (last visited January 7, 2016).

[4] A degenerative process that erodes away the myelin sheath that normally protects nerve fibers. *See* www.medicinenet.com/script/main/art.asp?articlekey=11143 (last visited January 7, 2016).

with carpal tunnel syndrome, and the plan was to refer him to UAMS for further evaluation and treatment. (T. 350) There is no indication in the record that this was ever done.

Despite diagnostic studies confirming moderate bilateral carpal tunnel syndrome, a non-examining State agency medical consultant, Charles Friedman, M.D., opined on November 5, 2012 that the medical evidence of record supported a non-severe finding. (T. 377) In part, his opinion was based on activities of daily living ("ADL's") that are mis-characterized. Dr. Friedman notes that Plaintiff "does meals and chores; walks, drives, and goes out alone; shops in stores and manages funds." Plaintiff actually reported, however, that he only sometimes helps his wife cook, heating things up in a microwave; that while he tries to help out with chores, it takes him much longer to do things as he has to stop and rest due to his symptoms; and, that his wife does "most all shopping." (T. 251) He also reported difficulty with personal care, that his "hands get numb, can't hold anything or feel what I'm doing with my hands," and that his shoulders and arms "get real weak and throb with pain." (T. 248, 250) The ALJ did not specifically discuss Dr. Friedman's opinion, but merely stated that he "essentially concurs with the opinions of the state agency consultants." (T. 19) Of course, the opinion of a consulting physician who does not examine the Plaintiff does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).

During an examination by Steve-Felix Belinga, M.D. on June 13, 2013, two weeks before the administrative hearing, Plaintiff reported neck and shoulder pain and that "my hands are killing me all the time." (T. 427) Physical examination results were mostly normal, but Dr. Belinga commented that "[i]t would be useful to get those test results [i.e., the 9/11/12 nerve conduction study and 6/12/13 cervical spine MRI], in order to determine the degree of neuroforaminal narrowing and/or spinal stenosis there might be." (T. 430) In the meantime, Dr. Belinga recommended physical

therapy exercises, as well as to encourage Plaintiff to make an attempt to lose weight. (T. 430) Notably, he ordered the gradual increase of Gabapentin from 400 mg TID to 800 mg TID, and the wearing of wrist splints as tolerated. (T. 430)

The ALJ concluded that Plaintiff's musculoskeletal impairments and bilateral carpal tunnel syndrome and their related limitations "are not severe to a degree that would limit activities beyond the scope of the residual functional capacity as determined in this decision." (T. 17, 18) Given the evidence of record, the Court cannot agree that the ALJ's RFC determination, including occasional overhead reaching bilaterally and frequent handling and fingering bilaterally, is supported by substantial evidence.

The Dictionary of Occupational Titles, § 559.687-074, 1991 WL 683797 (G.P.O.), defines "occasionally" as any activity or condition existing "up to 1/3 of the time and/or up to 10 pounds of force frequently," and "frequently" as any activity or condition existing "from 1/3 to 2/3 of the time and/or a negligible amount of force constantly."

Although the ALJ summarized some of the medical evidence, nowhere in the ALJ's decision is there a narrative discussion of how Plaintiff's moderate bilateral carpal tunnel syndrome, or the torn rotator cuff in his right shoulder, affects his ability to do basic work related activities. The ALJ's conclusory statements that Plaintiff's musculoskeletal impairments and bilateral carpal tunnel syndrome and their related limitations "are not severe to a degree that would limit activities beyond the scope of the residual functional capacity as determined in this decision" are insufficient. "[S]uch an explanation does not provide a sufficient logical bridge between the medical evidence and the RFC determination," and "[i]t fails to either provide limits accounting for Plaintiff's carpal tunnel syndrome [and torn rotator cuff] or explain why Plaintiff's carpal tunnel [or torn rotator cuff] does

not limit [his] ability to work." *See, e.g., St. Clair v. Colvin*, 2013 WL 4400832, at *2 (W.D. MO., Aug. 14, 2013). "[T]he decision does not discuss the degree to which Plaintiff can reach, handle, finger, or feel objects." *Id*.

Since several of the jobs the ALJ found Plaintiff could perform appear to involve some use of the hands, e.g., conveyor line bakery worker, spice mixer, box corner cutter, and processed film cutter (T. 20), and there is evidence in the record suggesting he has limited use of his hands, we believe remand is necessary to allow the ALJ to develop the record further regarding the degree to which Plaintiff can reach, handle and finger objects. *See* 20 C.F.R. § 404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

Accordingly, we find that remand is necessary to allow the ALJ to reconsider the Plaintiff's RFC. On remand, he is directed to obtain orthopaedic and neurological evaluations, complete with thorough RFC assessments, to determine the full extent of the limitations imposed by the Plaintiff's torn rotator cuff and carpal tunnel syndrome impairments. The ALJ should also re-contact Plaintiff's treating physicians, Dr. Shawn S. Miller and Dr. Steve-Felix Belinga, to request RFC assessments from them.

Concerning vocational evidence, the ALJ should ask a vocational expert on remand about the importance of the terms "occasional" and "frequent" as they relate to Plaintiff's ability to reach overhead, to handle and finger objects, and to perform any jobs in the national economy.

### V. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to

sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of January, 2016.

                                                  /s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE